Steven K. Lee, Cal. State Bar #172458
steve@donahue.com
Eric A. Handler, Cal. State Bar #224637
ehandler@donahue.com
DONAHUE GALLAGHER WOODS LLP
Attorneys at Law
1999 Harrison Street, 25th Floor
Oakland, California 94612-3520
mail: P.O. Box 12979
      Oakland, California 94604-2979
Telephone: (510) 451-0544
Facsimile: (510) 832-1486

Attorneys for Plaintiff
Purple Heart Patient Center, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURPLE HEART PATIENT CENTER, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MILITARY ORDER OF THE PURPLE HEART OF THE UNITED STATES OF AMERICA, INC., a United States federally chartered corporation; and MILITARY ORDER OF THE PURPLE HEART SERVICE FOUNDATION, INC., a Wisconsin corporation,<br><br>Defendants. | Case No. C13- 902<br><br>**COMPLAINT FOR**<br>**DECLARATORY RELIEF** |

As and for its complaint against defendants Military Order of the Purple Heart of the United States of America, Inc. and Military Order of the Purple Heart Service Foundation, Inc. (collectively, "Defendants"), plaintiff Purple Heart Patient Center, Inc. ("Patient Center") alleges:

## THE PARTIES

1. Patient Center is a California corporation with a principal place of business at 415 4th Street, Oakland, California, 94607, which is within Alameda County, California.

2. Patient Center is informed and believes, and based thereon alleges, that defendant

Military Order of the Purple Heart of the United States of America, Inc. ("Military Order"): (a) is a United States federally chartered corporation with a principal place of business in Springfield, Virginia; and (b) is composed only of men and women who received the Purple Heart Medal from the United States government.

3. Patient Center is informed and believes, and based thereon alleges, that defendant Military Order of the Purple Heart Service Foundation, Inc. ("Service Foundation"): (a) is a Wisconsin corporation with a principal place of business in Annandale, Virginia; and (b) is an entity that raises funds for Military Order.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

### Jurisdiction

4. This case is a civil action arising in the first instance under the trademark laws of the United States, 15 U.S.C. § 1051, et seq. (the "Lanham Act"). This Court has subject matter jurisdiction over Patient Center's declaratory relief/trademark-related claims pursuant to 15 U.S.C. § 1114, *et seq.* (trademark infringement and cybersquatting), 28 U.S.C. § 1331 (federal subject matter jurisdiction), 28 U.S.C. § 1338(a) (trademark actions), and 28 U.S.C. § 2201(a) (declaratory relief). This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of the parties and the amount in dispute purportedly (according to assertions made by Defendants) exceeds $75,000 exclusive of interest and costs.

### Venue

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claims pled herein occurred in this District.

### Intradistrict Assignment

6. Because this matter is an Intellectual Property Action, there is no basis for assignment to a particular location or division of the Court pursuant to Civil L.R. 3-2(c).

### GENERAL ALLEGATIONS

7. Patient Center is a City of Oakland Licensed Medical Cannabis Dispensary operating exclusively in Oakland, Alameda County, California. Since its inception, Patient

DONAHUE
GALLAGHER WOODS
LLP
ATTORNEYS AT LAW
OAKLAND

- 2 -

COMPLAINT FOR DECLARATORY RELIEF        CASE NO.

Center has operated pursuant to a permit issued by the City of Oakland. Each of Patient Center's patient customers is a medical patient who has obtained a written referral under California state law from a licensed physician allowing that patient to obtain and use medicinal cannabis to treat certain medical conditions (each, a "Physician Referral"). Individuals cannot make purchases from Patient Center without first obtaining a written Physician Referral in accordance with California state law.

8. To provide cannabis with significant medicinal properties and related goods to its patient customers, Patient Center has operated: (a) since 2006, a store in Oakland, California (the "Patient Center Store"); and (b) since 2008, a website (the "Patient Center Website") accessible at www.purpleheartpc.org (the "Patient Center Domain"). A patient customer of Patient Center cannot enter the Patient Center Store without first presenting Patient Center with proof of having obtained a current Physician Referral.

9. The essence of Patient Center's mission is to provide cannabis with significant medicinal properties to qualified patients for their use in treating specific illnesses from which they suffer as set forth under California law. Patient Center has never solicited or processed donations of goods or services for resale to the public under the guise of charitable fundraising nor advertised itself in connection with any such activities. Patient Center has never advertised its goods or services in connection with the Purple Heart medal or any magazine. Patient Center has never provided scholarships or financial assistance to any student. Patient Center has never provided counseling services to its patient customers nor any services for drug and/or alcohol addiction.

10. Some of the most widely sought after medicinal cannabis products, known for their significant medicinal benefits, are flowers purple in color and include a well-known cannabis strain named "Granddaddy Purple," which is almost exclusively available in California and believed to be first cultivated in and around Oakland, California since before the Patient Center came into existence. Patient Center therefore: (a) considers the location of the Patient Center Store in Oakland, California to be the "heart" or very common location where purple-tinged cannabis with significant medicinal properties can be found; and (b) asserts that, among

DONAHUE
GALLAGHER WOODS
LLP
ATTORNEYS AT LAW
OAKLAND

- 3 -

COMPLAINT FOR DECLARATORY RELIEF     CASE NO.

relevant consumers who shop for goods from Patient Center, the phrase "purple heart" has come to mean cannabis with significant medicinal properties originating from within or around the Oakland, California community in which Patient Center transacts its business. Accordingly, Patient Center chose the name "Purple Heart Patient Center" based strictly on these facts, and its selection of its name had nothing to do with the Purple Heart medal, either of the Defendants – whose existence Patient Center did not even know about before being recently contacted by Defendants for the first time as described below, nor any of the products or services offered by Defendants in conjunction with their trade or service marks or otherwise.

11. Patient Center is informed and believes, and based thereon alleges, that Military Order: (a) was formed and exists to protect the interests of individuals who have received the Purple Heart medal from the United States government; and (b) has a membership composed exclusively of recipients of the Purple Heart medal.

12. Patient Center is informed and believes, and based thereon alleges, that: (a) Service Foundation is the exclusive national fundraiser for Military Order; and (b) the purpose and objective of Service Foundation are to raise monies for service, welfare, and rehabilitation work in connection with Military Order members, other veterans, and their families (collectively, "Defendants' Constituents").

13. Patient Center is informed and believes, and based thereon alleges, that neither Military Order nor Service Foundation promotes the acquisition and use of medicinal cannabis as medicine for the treatment of any illness. To the contrary, Patient Center is informed and believes, and based thereon alleges, that Defendants actively and expressly campaign and advocate against medicinal cannabis use as part of their concerted efforts to provide alcohol and drug abuse treatment services to Defendants' Constituents.

14. Patient Center is informed and believes, and based thereon alleges, that to accomplish their missions Defendants also solicit donations of money, operate donation programs for used clothing, household goods, and vehicles, publish a magazine, provide tuition scholarships and financial aid, and provide counseling services to Defendants' Constituents. Again, Patient Center does not engage in any such activities directed to Defendants' Constituents

DONAHUE
GALLAGHER WOODS
LLP
ATTORNEYS AT LAW
OAKLAND

- 4 -

COMPLAINT FOR DECLARATORY RELIEF   CASE NO.

or otherwise.

15. Patient Center is informed and believes, and based thereon alleges, that Defendants purportedly own trademark registrations maintained by the United States Patent and Trademark Office associated with following registration numbers (collectively, "Defendants' Registrations") as used in connection with the goods or services described below (collectively, "Defendants' Goods/Services"):

- 2,206,761 – design mark stating in part "MILITARY ORDER OF THE PURPLE HEART 1782 1932" and which registration covers the sale of "cloth flags, flag sets and banners";

- 2,206,762 – design mark stating in part "MILITARY ORDER PURPLE HEART OF THE U.S.A. 1782 1932" and which registration covers the sale of "plaques";

- 2,206,764 – word mark stating "PURPLE HEART" and which registration covers the sale of a "magazine for combat wounded veterans";

- 2,206,768 – design mark stating in part "MILITARY ORDER PUPRLE HEART OF THE U.S.A. 1782 1932" and which registration covers the sale of "ornamental pins; medals; tie tacks; precious metal money clips; medallions; bolo ties with precious metal tips; clocks; watches";

- 2,208,425 – design mark stating in part "MILITARY ORDER OF THE PURPLE HEART SERVICE FOUNDATION" and which registration covers "providing scholarships, tuition assistance and financial aid to combat-wounded veterans, their dependents and survivors";

- 2,212,475 – design mark stating in part "MILITARY ORDER PURPLE HEART OF THE U.S.A. 1782 1932" and which registration covers the sale of "ball point pens, decals, informational brochures about military history and fraternal activities for combat-wounded veterans";

- 3,735,894 – design mark stating in part "MILITARY ORDER PURPLE HEART OF THE U.S.A. 1782 1932" and which registration covers the sale of "[b]rief bags"; and

- 3,738,805 – design mark stating in part "MILITARY ORDER PURPLE

HEART OF THE U.S.A. 1782 1932" and which registration covers the sale of "[d]uffle bags and brief bags."

16. Patient Center received a letter dated January 22, 2013 from an attorney purporting to represent Defendants. Therein Defendants:

 a. Alleged they "have extensively used the 'Purple Heart' trademark in connection with various charitable fundraising and veterans' services, including providing scholarships, tuition assistance and financial aid, publishing a magazine on veterans' issues, and providing rehabilitation and assistance to indigent, needy, and physically, mentally and socially handicapped American veterans of wars";

 b. Alleged Patient Center's "use of 'Purple Heart' in connection with [the Patient Center Website and Store] . . . is likely to cause confusion in the marketplace, and trades on the goodwill established in the 'Purple Heart' mark by [Defendants]"; and

 c. Demanded Patient Center cease and desist from further use of the PURPLE HEART mark and transfer ownership to Defendants of the Patient Center Domain.

17. Patient Center responded to Defendants' January 22, 2013 letter by:

 a. Arguing to Defendants, among other things, that there is no likelihood of confusion between Patient Center's use of the PURPLE HEART mark and the use thereof by Defendants considering: (i) the completely different audiences to which the parties communicate in connection with their respective uses of the mark; (ii) the inherently conflicting goods and services being provided by the parties in connection with the mark (e.g., Patient Center's provision of medicinal cannabis to its patient customers versus Defendants' provision of alcohol and drug abuse treatment services to Defendants' Constituents); (iii) the fact that none of Defendants' Goods/Services as described in Defendants' Registrations have any relationship with or connection to the medicinal cannabis sold by Patient Center in tandem with its use of the mark; (iv) the fact that anyone interested in purchasing Patient Center's medicinal cannabis has to first obtain a written Physician Referral after which such patients should be well aware that the goods offered by Patient Center have nothing to do with Defendants nor the goods or services offered by Defendants (including without limitation Defendants' Goods/Services); and (v) the fact that any

actual or prospective customer of Defendants would have to obtain a written Physician Referral before purchasing medicinal cannabis from Patient Center and accordingly would know through that process that Patient Center is not affiliated with Defendants; and

    b.    Informing Defendants that Patient Center was willing to place a disclaimer on the Patient Center Website stating Patient Center's non-affiliation with Defendants.

18. Consistent with its response to Defendants' January 22, 2013 letter, Patient Center has posted a disclaimer on the Patient Center Website explaining that Patient Center "is not affiliated with the 'Military Order of the Purple Heart' or the 'Military Order of the Purple Heart Service Foundation, Inc.'"

19. Patient Center received a second letter dated February 11, 2013 from the same attorney purporting to represent Defendants. Therein Defendants alleged that services provided by Patient Center "overlap with medical services sponsored by" Service Foundation, such as the latter's provision of "grants designed to improve and gain knowledge about providing rehabilitation services to those suffering from [Post Traumatic Stress]" and funding of studies into "associated behavioral health problems including . . . alcohol/drug abuse . . . ." Also therein, Defendants reiterated their demand that Patient Center cease and desist from further use of the PURPLE HEART mark else Defendants would initiate litigation against Patient Center.

20. As an enclosure to the aforementioned February 11, 2013 letter from their attorney, Defendants provided Patient Center with a draft complaint stating various claims against Patient Center for alleged trademark infringement under the Lanham Act, common law trademark infringement, cybersquatting under the Lanham Act, and state law unfair competition.

### FIRST CLAIM FOR DECLARATORY RELIEF
### (No Trademark Infringement Liability)

21. Patient Center realleges and incorporates by this reference as though fully set forth below the allegations contained in paragraph 1 through 20 above.

22. An actual controversy has arisen and now exists between the parties relating to Defendants' allegations (collectively, the "Trademark Infringement Allegations") that:

    a.    Patient Center has purportedly used the PURPLE HEART mark to give the

relevant public (which Patient Center believes is the potential and actual customer base of Patient Center) a false impression that Defendants have authorized or are otherwise associated with Patient Center's goods or services;

    b.    Patient Center has purportedly used the PURPLE HEART mark in the Patient Center Domain to falsely attract internet users seeking information about Defendants' services or who are interested in supporting Defendants;

    c.    Patient Center's use of the PURPLE HEART mark is purportedly likely to cause confusion or mistake, or to deceive the relevant public into falsely believing, that Patient Center is approved or sponsored by Defendants;

    d.    Patient Center's use of the PURPLE HEART mark supposedly constitutes willful infringement by Patient Center of one or more of Defendants' Registrations under the Section 32(1) of the Lanham Act;

    e.    Among the relevant public the PURPLE HEART mark has purportedly come to represent and symbolize the reputation and goodwill associated with Defendants; and

    f.    Patient Center's use of the PURPLE HEART mark supposedly subjects Patient Center for liability for common law trademark infringement in violation of the Lanham Act § 43(a) (15 U.S.C. § 1125).

23. A declaratory judgment is therefore necessary in that: Defendants contend the Trademark Infringement Allegations are true; and Patient Center denies the truth of the Trademark Infringement Allegations.

WHEREFORE, Patient Center prays for a declaratory judgment against Defendants and in favor of Patient Center as set forth below.

## SECOND CLAIM FOR DECLARATORY RELIEF

### (No Cybersquatting Liability)

24. Patient Center realleges and incorporates by this reference as though fully set forth below the allegations contained in paragraph 1 through 23 above.

25. An actual controversy has arisen and now exists between the parties relating to Defendants' allegations (collectively, the "Cybersquatting Allegations") that Patient Center's

registration and use of the Patient Center Domain purportedly:

    a. Constitutes bad faith;

    b. Violates the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); and

    c. Will cause irreparable harm to Defendants.

26. A declaratory judgment is thus necessary in that: Defendants contend the Cybersquatting Allegations are true; and Patient Center denies the truth of the Cybersquatting Allegations.

**PRAYER FOR RELIEF**

WHEREFORE, Patient Center prays for a declaratory judgment against Defendants and in favor of Patient Center as follows:

1. That the Court declare the respective rights and duties of Patient Center and Defendants as to whether Patient Center can be held liable to Defendants, or either of them, for having allegedly infringed any of Defendants' Registrations or any other trade or service mark registration owned by Defendants, or either of them, in violation of 15 U.S.C. § 1114;

2. That the Court declare the respective rights and duties of Patient Center and Defendants as to whether Patient Center can be held liable to Defendants, or either of them, for having allegedly engaged in common law trademark infringement of the rights of Defendants, or either of them, pursuant to 15 U.S.C. § 1125(a);

3. That the Court declare the respective rights and duties of Patient Center and Defendants as to whether Patient Center can be held liable to Defendants, or either of them, for cybersquatting in connection with the Patient Center Domain pursuant to 15 U.S.C. § 1125(d);

4. That Patient Center be awarded its costs, expenses, and attorney's fees incurred herein; and

///

///

///

///

5. For such other and further relief as the Court deems just and proper.

Dated: February 27, 2013

DONAHUE GALLAGHER WOODS LLP

By: _____
Eric A. Handler
Attorneys for Plaintiff
Purple Heart Patient Center, Inc.

DONAHUE
GALLAGHER WOODS
LLP
ATTORNEYS AT LAW
OAKLAND

- 10 -

COMPLAINT FOR DECLARATORY RELIEF          CASE NO.