United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURPLE HEART PATIENT CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> MILITARY ORDER OF THE PURPLE HEART OF THE UNITED STATES OF AMERICA, INC. and MILITARY ORDER OF THE PURPLE HEART SERVICE FOUNDATION, INC., <br><br> Defendants. | No. C 13-00902 WHA <br><br> **ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON CLAIMS THREE THROUGH ELEVEN AND GRANTING IN PART AND DENYING IN PART REQUESTS FOR JUDICIAL NOTICE** |

In this declaratory judgment action for alleged trademark infringement, defendants move for judgment on the pleadings pursuant to FRCP 12(c). For the reasons stated below, the motion is **DENIED**.

**STATEMENT**

In 1782, George Washington created the Badge of Military Merit. It was succeeded by the Order of the Purple Heart in 1932, a medal awarded to combat veterans wounded or killed in action.

Plaintiff Purple Heart Patient Center, Inc. sells medical marijuana (also known as cannabis) in Oakland via a permit issued by the City of Oakland (Compl. ¶ 7). Defendant Military Order of the Purple Heart of the United States of America, Inc. ("Military Order") was

1  chartered by Congress in 1958 and is composed of recipients of the Purple Heart medal.
2  Defendant Military Order of the Purple Heart Service Foundation, Inc. ("Service Foundation")
3  raises money for the Military Order.  Defendants hold a number of trademarks and service marks,
4  including United States Registration Nos. 2,206,761, 2,206,762, 2,206,764, 2,206,768, 2,208,425,
5  2,212,475, 3,735,894, 3,738,805, and 4,015,788.

6  In February 2013, plaintiff, medical marijuana dispensary, filed this action seeking
7  declaratory relief.  This action was reassigned to the undersigned judge in April 2013.  The
8  operative May 2013 case management order set an April 2014 fact discovery deadline and a July
9  2014 jury trial date (Dkt. No. 31).

10  A July 2013 order granted the parties' stipulation to amend the complaint to add, *inter*
11  *alia*, trademark cancellation claims.  The gravamen of the case now is that plaintiff seeks
12  declaratory relief from trademark infringement and cybersquatting claims.  For their part,
13  defendants seek "equitable relief and not money damages" via their trademark infringement and
14  state-law counterclaims (Dkt. No. 47).  Two of the marks at issue in this action are shown below:



**Figure 1.   U.S. Registration No. 2,212,475.**

PURPLE HEART

**Figure 2.   U.S. Registration No. 4,015,788.**

This order pauses to note that there was another action pending in the District of Maryland, captioned as *Military Order of the Purple Heart Service Foundation, Inc. v. Others First, Inc., et al.*, No. 1:12-cv-01483-GLR (D. Md. May 16, 2012), which has since settled. Plaintiff was not a party to that action.  A December 2012 order by Judge George L. Russell, III granted a motion to dismiss counterclaims of cancellation of the Service Foundation's United

2

States Registration No. 4,015,788 on the basis of fraudulent procurement and violation of the Sherman Act (Dkt. No. 35). The dismissal (in favor of defendant Service Foundation, here) was based, in part, on failure to plead with particularity.

**ANALYSIS**

**1. JUDGMENT ON THE PLEADINGS.**

Defendants seek judgment on plaintiff's cancellation claims based on lack of standing. Defendants argue that plaintiff cannot show the type of damages cognizable under federal law because the sale of marijuana, a substance prohibited by the federal Controlled Substances Act, 21 U.S.C. 812(b)(1)(B), 812(c) Schedule I(c)(10), 841(a)(1), 844(a), violates federal law. Plaintiff cannot use the Lanham Act to protect activities illegal under federal law, defendants argue.

A judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Title 15 of United States Code Section 1064 provides the grounds for bringing a cancellation claim. Section 1064 states in relevant part:

> A petition to cancel a registration of a mark, stating the grounds relied upon, may . . . be filed as follows by *any person who believes that he is or will be damaged*, including as a result of a likelihood of dilution by blurring or dilution by tarnishment under section 1125(c) of this title, *by the registration of a mark*
>
>       \*      \*      \*
>
> (3) At any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered, or is functional, or has been abandoned, or *its registration was obtained fraudulently* or contrary to the provisions of section 1054 of this title or of subsection (a), (b), or (c) of section 1052 of this title for a registration under this chapter, or contrary to similar prohibitory provisions of such prior Acts for a registration under such Acts, or if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used . . . .

(emphasis added). Our court of appeals has stated that the petitioner must plead facts showing that the petitioner is "more than an intermeddler" and has a "legitimate personal interest" and a "real controversy between the parties." *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346,

1   349 (9th Cir. 1984). A prominent treatise has noted the liberalization of the standing requirement
2   to serve the public interest in broadly interpreting the class of persons allowed to institute
3   cancellation proceedings. 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 20:46 (4th
4   ed.).

5   Plaintiff has standing to challenge defendants' marks because defendants sent plaintiff
6   cease-and-desist letters, dated January and February 2013, thereby raising a threat of peril to
7   which plaintiff is entitled to address by way of a declaratory relief action. According to the
8   complaint, the letters alleged that plaintiff's use of "Purple Heart" is likely to cause confusion in
9   the marketplace. The letters demanded that plaintiff cease and desist further use of the mark and
10  transfer to defendants ownership of plaintiff's domain names. Appended to the February 2013
11  letter was a draft complaint alleging various claims for relief, including trademark infringement
12  (Compl. ¶¶ 18–22).

13  In order to defend itself, plaintiff commenced this action. The complaint alleged
14  plaintiff's denial of defendants' trademark infringement allegations and that plaintiff was "likely
15  damaged by continued registration of the mark in that Defendants rely in part on said registration
16  in their Counter-Complaint" (Compl. ¶¶ 36, 42, 48, 54, 60, 66, 73, 80). The crux of plaintiff's
17  cancellation claims is that defendants obtained the registrations fraudulently and the marks are
18  merely descriptive of the Purple Heart medal and the Badge of Military Merit. Plaintiff alleged
19  that defendants' failure to disclose prior use of the mark by others (*e.g.*, the United States military
20  has awarded the Purple Heart medal since 1932) and false suggestion of a connection with
21  national symbols (when defendants are merely chartered corporations — not the government)
22  constitute fraud (Compl. ¶¶ 31–34, 37–40, 43–46, 49–52, 55–58, 61–64, 67–71, 74–78, 82–85).
23  Defendants followed through with their threats by answering the complaint with trademark
24  infringement counterclaims.

25  While it is a concern that plaintiff could flagrantly violate federal laws and simultaneously
26  seek the assistance of a federal court of equity to cancel trademarks, nevertheless, defendants
27  began this controversy by sending cease-and-desist letters forcing plaintiff to defend itself. If the
28  trademark owner had sued first for damages, would anyone say that the defendant would not have

4

had the right to defend itself in court? No, that would not be the American way. And if that is so, then declaratory relief is equally available to the accused. Given that defendants seek relief for alleged trademark infringement arising from registrations which could be invalid, it would be wrong to deny plaintiff the opportunity to defend itself.

*CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630, 634 (9th Cir. 2007), does not aid defendants. There, our court of appeals found that noncompliance with the Food, Drug, and Cosmetic Act's labeling requirements could not serve as a basis for extending trademark protection. The decision stated "only *lawful* use in commerce can give rise to trademark priority." It would be anomalous to extend trademark protection to a seller based on actions the seller took in violation of the law. The decision to cancel the trademark was affirmed. Unlike *CreAgri* which involved a seller seeking to *benefit* from actions taken in violation of the labeling law in an effort to *maintain* its trademark, plaintiff, here, seeks to *defend* itself against trademark infringement. Our plaintiff does not seek to challenge defendants' marks based on its sale of an illegal drug. Rather, in marshaling its defense to defendants' counterclaims, our plaintiff has included cancellation claims directed at challenging the validity of the asserted trademarks. It would be unfair to strip plaintiff of this avenue of defense.

Taken one step further, if we were to recognize defendants' theory, then every trademark action would devolve into a side showing wherein the trademark owner dredges up various other federal laws supposedly violated by the accused. This cannot be.

At oral argument, defendants relied upon *GoClear LLC v. Target Corp.*, No. 3:08-cv-02134-MMC, 2009 WL 160624, at *2–5 (N.D. Cal. Jan. 22, 2009) (Judge Maxine M. Chesney), another inapposite decision. *GoClear* involved an entity seeking to rely on actions taken in violation of the Food, Drug, and Cosmetic Act to support cancellation of registered marks. The cancellation petitioner failed to seek and receive approval from the Food and Drug Administration for its new drug. That new drug, thus, could not support a priority showing for a cancellation counterclaim. By contrast, plaintiff, here, does not seek to use its sale of an illegal drug to support its cancellation claims. Plaintiff's cancellation allegations are directed at the marks being merely descriptive, the marks suggesting a false connection with national symbols,

5

and fraud on the United States Patent and Trademark Office. Plaintiff is entitled to marshal its defense.

As an aside, please note that defendants' trademark infringement allegations extend beyond the sale of illegal drugs. Defendants' claim includes plaintiff's "sale of bags, drink ware, hats, and home goods" (Ans. ¶¶ 33, 40). Plaintiff argues that the sale of these items, at least, are not prohibited by federal law (Opp. 8, n. 5).

Finally, this order does not find the other decisions relied upon by defendants persuasive. In *James v. City of Costa Mesa*, 700 F.3d 394, 397 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2396 (2013), our court of appeals found that medical marijuana use was not protected by the Americans with Disabilities Act. In *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 151 (2002), the Supreme Court found that the NLRB lacked authority to award backpay to illegal aliens. These decisions are not on point, and indeed, the parties agree that there are no decisions finding lack of standing to allege trademark cancellation claims based on an entity's business violating federal law.

Accordingly, defendants' motion for judgment on the pleadings is **DENIED**.

2.   **REQUESTS FOR JUDICIAL NOTICE.**

Defendants request judicial notice of nine trademark registrations and a federal statute, 36 U.S.C. 140501, *et seq*. Plaintiff requests judicial notice of a report. FRE 201(b) permits judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Title 36 of United States Code 140501, *et seq*., is titled "Military Order of the Purple Heart of the United States of America, Incorporated." Although it is generally unnecessary to take judicial notice of federal statutes, this order recognizes that Sections 140501 and 140503 state that the Military Order "is a federally chartered corporation" and its membership is composed of members that have "received the Purple Heart for wounds received . . . during military or naval combat against any armed enemy of the United States." The request is **GRANTED**.

6

Defendants request judicial notice of Registration Nos. 2,206,761, 2,206,762, 2,206,764, 2,206,768, 2,208,425, 2,212,475, 3,735,894, 3,738,805, and 4,015,788. These are public records that even plaintiff recognizes (Dkt. No. 48 at ¶¶ 8, 11, 13). The request is **GRANTED**.

Plaintiff requests judicial notice of a Congressional Research Service report, titled "Congressionally Chartered Nonprofit Organizations ('Title 36 Corporations'): What They Are and How Congress Treats Them," dated April 8, 2004, for the proposition that Congress has ceased granting charters for groups to incorporate because of concern that the public may be misled into believing the corporations are approved or supervised by the government (Opp. 1, n. 1). This is not a judicially noticeable fact that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. The request is **DENIED**.

## CONCLUSION

Defendants' motion for judgment on the pleadings pursuant to FRCP 12(c) is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 11, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE